ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
SEP 29 2004
U.S. COURT OF FEDERAL CLAIMS

AT&T Corp.,

Plaintiff,

v.

The United States,

Defendant.

No. 04-1512C

## COMPLAINT

For its Complaint in this action Plaintiff AT&T ("AT&T") alleges as follows:

## INTRODUCTION

1. This action arises from a dispute between Lucent Technologies, Inc. ("Lucent") and Defendant United States of America ("the Government") relating to Lucent's compliance with the 1995 Cost Accounting Standard 413 ("1995 CAS") in connection with Lucent's sale of certain assets of its Government business to the General Dynamics Corporation ("GD") pursuant to an Agreement for the Purchase and Sale of Assets dated as of August 20, 1997, effective October 1, 1997 ("October 1, 1997 GD Sale.").

2. AT&T brings this action to appeal the Final Decision of a Divisional Administrative Contracting Officer ("Contracting Officer"), dated September 30, 2003, asserting against Lucent and AT&T entitlement to a principal sum of $28,260,630, plus interest in the

connection with the October 1, 1997 GD Sale. The Final Decision does not identify the grounds upon which the Government seeks to hold AT&T liable for any of the Government's claim against Lucent.

## PARTIES

3. AT&T is a corporation organized and existing under the laws of the State of New York with its principal place of business in the State of New Jersey.

4. The Government is acting through the Defense Contract Management Agency of the Department of Defense.

## JURISDICTION

5. This Court has jurisdiction over this action pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(1) and 28 U.S.C. § 1491(a)(1) and (2). This appeal has been filed within one year of the Contracting Officer's Final Decision.

## SUMMARY OF FACTS

### A. The AT&T 1996 Spin Off

6. Prior to 1995, AT&T was a global telecommunications and information services company providing voice, data and video telecommunications services to large and small businesses and consumers and to various departments and agencies of the Government.

7. Beginning in November 1995, AT&T engaged in several transactions which

8. Pursuant to a "Separation and Distribution Agreement," dated as of February 1, 1996 and amended and restated as of March 29, 1996, AT&T transferred to Lucent certain assets and liabilities of several AT&T businesses, including certain Government and commercial contracts.

9. On April 10, 1996, Lucent made an initial public offering of 17.6 percent of its consumer stock, leaving AT&T the owner of 82.4 percent. On September 30, 1996, AT&T distributed to AT&T shareholders all of the 82.4 percent of Lucent shares owned by AT&T on that date. Upon the completion of this transaction, AT&T retained no ownership interest in Lucent.

B. <u>Pension Plan Transfers Connected to AT&T Spin-Off</u>

10. Prior to 1996, AT&T sponsored two qualified defined benefit pension plans. AT&T, on an ongoing basis, computed pension costs for these plans as a whole and then allocated a share of pension costs, using an allocation base, to the various AT&T businesses.

11. In early 1996, AT&T and Lucent entered into an agreement entitled the "Employee Benefits Agreement" ("EBA"), dated February 1, 1996, as amended on March 29, 1996, relating to the pension obligation of AT&T to active and inactive employees associated with the former AT&T businesses acquired by Lucent. Pursuant to the EBA, Lucent assumed various pension obligations to these active and inactive employees, and AT&T transferred to Lucent's newly-created counterpart pension plans sufficient pension assets to ... th

12. AT&T's transfer of government contracts to Lucent was to become effective upon execution of a novation agreement with the Government. A novation agreement effectuating this transfer, and recognizing Lucent as successor-in-interest to AT&T on certain Government contracts, was executed by the parties on May 5, 1997.

### C. Lucent and AT&T After Spin-Off Transaction

13. AT&T, following the spin-off, continued to perform existing and new contracts with the Government and continued to account for pension costs of its employees in accordance with the CAS.

14. Upon information and belief, following the spin-off transaction, Lucent performed in all material respects the Government contracts novated to Lucent under the May 5, 1997 agreement. Lucent also was awarded new government contracts. Upon information and belief, Lucent also accounted for pension costs of its employees in accordance with the CAS.

15. The pension funds of AT&T and, upon information and belief, Lucent have been overfunded at all times since the spin-off transaction.

### D. Government Claims Related To Spin-Off Transaction

16. As the result of AT&T's spin-off of Lucent, the Government has claimed, in a Final Decision dated September 30, 2002, that it is entitled to some $7,194,000 from AT&T, representing the additional amount the government contends is properly attributable, under the

17. AT&T has appealed that Final Decision to this Court and that appeal is now pending before this Court (Case No. 03-2258C) (Judge Lettow) ("The AT&T litigation"). In the AT&T litigation, AT&T contends, *inter alia*, that the spin-off transaction did not constitute a segment closing under 1995 CAS 413 and that the Government, in any event, claims a far larger entitlement to surplus than that to which it would be entitled under 1995 CAS 413, if it were applicable.

18. The claims and counterclaims in the AT&T litigation encompass all claims of the Government, under the 1995 CAS 413, related to the transfer of certain assets and liabilities by AT&T to Lucent in 1996.

E. The Sale By Lucent To GD

19. More than a year after the AT&T-Lucent transaction, Lucent sold to GD some of the assets and liabilities that had been transferred to Lucent by AT&T as part of the AT&T-Lucent transaction. AT&T had no involvement in the October 1, 1997 GD Sale, and has no first-hand knowledge concerning the details of that transaction.

F. The Government's Claim Related To The October 1, 1997 GD Sale

20. The Government claims in the September 30, 2003 Final Decision related to the October 1, 1997 GD Sale that this transaction constituted a segment closing under the 1995 CAS 413, and that Lucent failed to make a proper calculation, under 1995 CAS 413, of the Government's surplus entitlement related to the active and inactive employees associated with

21. The September 30, 2003 Final Decision claims that both AT&T and Lucent share responsibility for the alleged deficiency in Lucent's 1995 CAS 413 calculation related to the October 1, 1997 GD Sale.

G. CAS 413

22. The 1995 CAS 413 provides, *inter alia*, that: "If a segment is closed, the contractor shall determine the difference between the actual liability for the segment and the market value of the assets allocated to the segment. . . . The difference between the market value of the assets and the actual liability for the segment represents an adjustment of previously-determined pension costs." CAS 413.50(c)(12).

23. The 1995 CAS 413 defines a segment closing as a segment that has: "(i) been sold or ownership has been transferred, (ii) discontinued operations, or (iii) discontinued doing or actively seeking government business under contracts subject to the standard." CAS 413.30(a)(20).

**COUNT I**

**(No Basis for AT&T Liability)**

24. AT&T realleges and incorporates by reference herein the allegations in paragraphs 1-23 hereof.

25. The September 30, 2003 Final Decision relates to a Government claim that

26. The Government has previously made a claim against AT&T in the AT&T litigation for allegedly failing to make a proper calculation under CAS 413 in connection with AT&T's spin-off of certain assets to Lucent. That claim is pending in another case in this Court.

27. AT&T does not have ongoing responsibilities under CAS 413 to assure that Lucent or any subsequent acquirers of any of its assets first conveyed by AT&T to Lucent must make proper calculations under CAS 413. The Standard nowhere imposes such a burden on any Government contractor.

28. Lucent has the obligation to account for pension assets and liabilities associated with its transfer of assets to GD if CAS 413 applies to that transfer. That dispute is between Lucent and the Government, and AT&T has no involvement or stake therein.

29. The September 20, 2003 Final Decision does not identify the basis for which the Government seeks to impose liability on AT&T related to the October 1, 1997 GD Sale. The novation agreement of May 5, 1997 provides no such basis. There is no legal basis in CAS 413 or otherwise for imposing such liability.

WHEREFORE, AT&T respectively requests that judgment be entered in favor of AT&T on Count I hereof dismissing the Government's claim against AT&T.

**COUNT II**

**(No CAS 413 Predicate for Government Claims)**

31. Lucent concludes in Count I of a separate appeal from the September 30, 2003 Final Decision that it did not close a segment, within the meaning of CAS 413, in connection with the October 1, 1997 GD Sale.

32. AT&T does not have sufficient information to confirm this conclusion but, if this conclusion is correct, there is no basis for any claim against AT&T.

WHEREFORE, AT&T respectfully requests that, if the Court finds that the October 1, 1997 GD Sale did not involve a segment closing within the meaning of CAS 413, it dismiss the Government's claim against AT&T.

**COUNT III**

**(Government's Claim Under CAS 413 Exceeds Any Entitlement Thereunder)**

33. AT&T realleges and incorporates herein by reference herein the allegations in paragraphs 1-32 hereof.

34. Lucent concludes in Counts II, III, IV and V of a separate appeal from the September 30, 2003 Final Decision that, even if the October 1, 1997 GD Sale constituted a segment closing under CAS 413, the Government is entitled to recover nothing, or substantially less than the Government's claim, if the appropriate calculation under CAS 413 is made.

35. AT&T does not have sufficient information to confirm this conclusion but, if this conclusion is correct, there is no basis for any claim against AT&T.

## COUNT IV

**(Lucent's Claim For Reimbursement of Postretirement Medical Benefit Liabilities)**

36. AT&T realleges and incorporates herein by reference the allegations in paragraphs 1-35 hereof.

37. Lucent concludes in Count VI of its Complaint, in a separate appeal from the September 30, 2003 Final Decision, that the Contracting Officer improperly denied Lucent's claim for reimbursement of postretirement medical benefits costs for those employees of Lucent associated with the October 1, 1997 GD Sale.

38. The amount of Lucent's postretirement medical benefits claim is $18,708,562.

39. AT&T does not have sufficient information to confirm this conclusion but, if the conclusion is correct, any claim against Lucent or AT&T should be reduced by the amount of Lucent's postretirement medical benefit claim.

WHEREFORE, AT&T respectfully requests that, if the Court finds that Lucent is entitled to recover from the Government the costs Lucent claims for postretirement benefits connected to the October 1, 1997 GD Sale, the Government's claim against Lucent and AT&T should be reduced by the amount of Lucent's postretirement benefits claim.

Respectfully submitted this 29th Day of September, 2004.

Of Counsel:
Howard J. Stanislawski, Esq.
Jonathan A. DeMella, Esq.
Sidley Austin Brown & Wood LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000 (Phone)
(202) 736- 8711 (Fax)

Frank O'Toole

Francis J. O'Toole, Esq.
Sidley Austin Brown & Wood LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000 (Phone)
(202) 736- 8711 (Fax)

Attorney For Plaintiff AT&T Corporation